UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAUNCEY CASTODIO, | No. C 13-713 SI (pr) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| RANDY GROUNDS, warden, | |
| Respondent. | |

## INTRODUCTION

Chauncey Castodio filed this *pro se* action for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a prison disciplinary decision that resulted in a time credit forfeiture. The court reviewed the petition, dismissed two claims, and found cognizable a claim that Castodio's due process rights were violated in that the disciplinary decision was not supported by sufficient evidence. Respondent has filed an answer and Castodio has filed a traverse. For the reasons explained below, the petition will be denied.

## BACKGROUND

On or about July 10, 2011, a CDC-115 rule violation report was written that charged Castodio with possession of inmate manufactured alcohol.[1] Correctional officer ("C/O") Xiong wrote that, while performing a security check of the tier, he approached the cell assigned to inmates Morales and Castodio. There, he "smelled a strong pungent odor of fermented alcohol." Docket # 1-2, p. 6. C/O Xiong looked into the cell and observed Castodio "standing over the

---

[1] Section 3016(a) of Title 15 of the California Code of Regulations provides in part: "Inmates shall not . . . use, possess, manufacture, or have under their control any . . . alcohol."

sink, squeezing a brown liquid substance from a plastic bag into a large clear plastic bottle. Morales was standing near Castodio and facing [Xiong]." *Id.* Xiong continued walking and summoned two other correctional staff members for assistance. They returned to the cell, removed the inmates, and C/O Xiong searched the cell. Xiong wrote that he "found two large plastic bottles, filled with a brown colored liquid substance, inside a large paper bag on the floor, under the bed. The filled plastic bottles, closely matched the plastic bottle [he] observed Castodio filling, while standing over the sink moments earlier. The brown colored liquid in each bottle smelled strongly of a pungent fermented fruit alcohol and was the same that [Xiong] smelled outside of the cell." *Id.* A sergeant inspected the substance and "confirmed the contents were consistent with Inmate Manufactured Alcohol." *Id.* He confiscated the substance – about a gallon in quantity – and flushed it down a toilet. *Id* at 7.

A disciplinary hearing was held, at which Castodio pled not guilty. According to the report for the hearing, Castodio stated, "It wasn't mine, I was not handling any alcohol." Docket # 1-2, p. 4. The report erroneously stated that Castodio did not request witnesses and no witnesses attended the hearing. *Id.; see* Docket # 1-3, 6-7 (second level appeal response stating that hearing officer confirmed that this was a typographical error and that Castodio had requested Morales as a witness). In fact, Castodio's cellmate Morales was requested and appeared as a witness at the hearing. *Id.* The cellmate, Eliseo Morales, also wrote a statement that was used at the original hearing in which he stated that he had tried to explain to C/O Xiong "that the pruno did not belong to my celly C. Castodia . . . but he said that he'd already written the write-up & he wasn't gona (sic) change it. I would just like to inform & let it be known to the hearing luetenant (sic) that the pruno was mine . . . & not my celly's." Docket # 1-2, p. 8.[2]

---

[2]Morales also wrote a longer "to who[m] it may concern" statement dated July 28, 2011, in which he stated that "the inmate manufactured alcohol in question 'did not' belong to my celly C. Castodio. The inmate manufactured alcohol in question 'did in fact belong to me E. Morales,' and my celly C. Castodio should not be punished for my actions." Docket # 1-2, p. 9. Morales went on to discuss certain perceived errors in Xiong's report, i.e., that the alcohol was in two Folger's jars in a paper bag that were found during the cell search, and (contrary to Xiong's report) no plastic bag or large clear plastic bottle was found. Morales wrote that he explained to C/O Xiong the day after the search that he was responsible for the alcohol and his cellmate was not. Morales also wrote that he had written a statement for his cellmate to take to the hearing – apparently referring to the shorter statement at Docket # 1-2, p. 8. He further wrote that he had attended the hearing as a witness and told the hearing officer

Castodio was found guilty of possession of inmate manufactured alcohol, a violation of 15 Cal. Code Regs. § 3016(a). Docket # 1-2, p. 3. The hearing officer wrote that his findings were based on the information in the CDC-115 written by C/O Xiong and that the violation occurred within the inmate's area of control. The hearing officer also explained in his findings the reasons for his rejection of Morales' efforts to take sole responsibility for the alcohol that Castodio was seen handling and that was found under Castodio's bed: "Possession means it was found on the inmate's person, within the inmate's area of responsibility or evidence shows that defendant retained constructive possession. All inmates are assigned areas within their living space for storage of personal property. Any contraband found within this area is considered the responsibility of that inmate. If this area is shared with another inmate, the inmates are jointly responsible with reasonable evidence both inmates were aware of its presence." Docket # 1-2, p. 4. The discipline imposed included a forfeiture of 120 days of time credits and suspensions of various privileges. *Id.*

Castodio filed unsuccessful inmate appeals about the disciplinary decision. *See* Docket # 1-3. He also filed unsuccessful state court habeas petitions challenging the disciplinary decision.

Castodio then filed this action. The court reviewed the petition for writ of habeas corpus, dismissed two claims, and ordered respondent to file an answer showing cause why the petition should not be granted on the claim that Castodio's right to due process was violated due to the absence of some evidence. (The claims that were dismissed were claims that the state court had decided his petition erroneously and that his rights under the Confrontation Clause and Due Process Clause were violated by prison officials' failure to preserve and test the substance alleged to be inmate-manufactured evidence.) Respondent has filed an answer and Castodio has filed a traverse.

---

that the alcohol was his and not Castodio's. The hearing officer indicated that he was going to dismiss Castodio's CDC-115 and give a CDC-115 to Morales and would call them back in a few days. *Id.* The hearing officer later called Castodio down to the office and told him he did not believe his story and that he believed Castodio was "pressuring" Morales. *Id.* at 10.

3

**DISCUSSION**

A. <u>The Due Process Claim - Sufficiency Of The Evidence</u>[3]

An inmate in California is entitled to due process before being disciplined when the discipline imposed will inevitably affect the duration of his sentence. *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). The process due in such a prison disciplinary proceeding includes written notice, time to prepare for the hearing, a written statement of decision, allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the accused where the inmate is illiterate or the issues are complex. *Wolff v. McDonnell*, 418 U.S. 539, 564-67 (1974). The Due Process Clause only requires that prisoners be afforded those procedures mandated by *Wolff* and its progeny; it does not require that a prison comply with its own, more generous procedures. *See Walker v. Sumner*, 14 F.3d 1415, 1419-20 (9th Cir. 1994), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

The revocation of good-time credits does not comport with the minimum requirements of procedural due process in *Wolff* unless the findings of the prison disciplinary decision-maker are supported by some evidence in the record. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). There must be "some evidence" from which the conclusion of the decision-maker could be deduced. *Id.* at 455. An examination of the entire record is not required nor is an independent assessment of the credibility of witnesses or weighing of the evidence. *Id.* The relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary decision-maker. *Id.* This standard is considerably lower than that applicable in criminal trials. *Id.* at 456. The Ninth Circuit additionally has held that there must be some indicia of reliability of the information that forms the basis for prison disciplinary actions. *Cato v. Rushen*, 824 F.2d 703, 704-05 (9th Cir. 1987).

Here, there was sufficient evidence to support the disciplinary decision. The evidence

---

[3] The parties dispute whether Castodio exhausted state court remedies for his claim. The court chooses to reach the merits and deny the petition, notwithstanding the failure to exhaust state court remedies. 28 U.S.C. § 2254(b)(2); *see also Henry v. Ryan*, No. 09-99007, slip op. at 9 (9th Cir. June 19, 2013) (declining to reach the procedural default issue about which the parties disagreed, and instead exercising "discretion to deny the claim on the merits as permitted by 28 U.S.C. § 2254(b)(2).")

United States District Court
For the Northern District of California

1 included C/O Xiong's written description in the CDC-115 that (a) he smelled "fermented
2 alcohol" when he approached the cell, (b) he observed Castodio squeezing a brown liquid
3 substance from a bag into a plastic bottle, (c) he found two plastic bottles filled with a brown
4 colored substance inside a paper bag on the floor under the bed,[4] (d) those plastic bottles looked
5 like the ones he observed earlier, (e) the brown colored liquid in those bottles "smelled strongly
6 of a pungent fermented fruit alcohol and was the same that [he] smelled outside of the cell."
7 Docket # 1-2, p. 3.  The evidence also included C/O Xiong's written statement that sergeant
8 Greer had inspected the substance and confirmed it was consistent with inmate-manufactured
9 alcohol.  And the evidence included cellmate Morales' statement that the substance was pruno,
10 i.e., homemade alcohol, even though Morales claimed in the statement that it was his rather than
11 Castodio's alcohol.

12 Castodio's denial of responsibility, and Morales' acceptance of responsibility, for the
13 inmate-manufactured alcohol do not require that the decision be overturned.  Even if this
14 evidence could have led the hearing officer to reach a different conclusion, this court is not
15 compelled to set aside the decision reached by the hearing officer.  The fact that an inmate offers
16 a defense does not mean that the hearing officer must accept it as true.  Further, the cellmate's
17 admitted possession of the alcohol did not logically eliminate liability for Castodio, as both
18 could have constructively possessed the alcohol.  (Of course, the case against Castodio was
19 stronger than mere constructive possession, as he was observed handling the substance thought
20 to be alcohol by the correctional officer who walked by the cell.)  This case is analogous to
21 *Superintendent v. Hill*, where the Supreme Court stated the evidence was sufficient to support
22 the discipline even though the correctional officer did not see which of three inmates assaulted
23 another inmate and only saw three inmates departing the area after hearing a commotion.  "The
24 Federal Constitution does not require evidence that logically precludes any conclusion but the
25 one reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. at 457.

---

[4]The cell numbers for the inmates indicate that Morales was assigned the upper bunk (LA-323U) and Castodio was assigned the lower bunk (LA-323L) in cell 323 in Lassen A-Side. *See* Docket # 1-2, p. 3.

5

Castodio's facts are similar to those in the case on which the California Court of Appeal relied in denying his petition, *In re Zepeda*, 141 Cal. App. 4th 1493 (Cal. Ct. App. 2006). *Zepeda* explained that, under *Superintendent v. Hill*'s some evidence standard, a disciplinary decision would be upheld even if the reviewing court thought there was "a realistic possibility" that the inmate was not guilty so long as there was some evidence that he was guilty. *Zepeda*, 141 Cal. App. 4th at 1498.

> Zepeda's reliance on the evidence that supports his assertion not to have known about the razor blades, such as his cellmate's acknowledgement of ownership and Zepeda's own claim of innocence, does not change the analysis under *Hill*. *Hill* emphasizes that the reviewing court is not to engage in an "examination of the entire record" or "weighing of the [conflicting] evidence." (*Hill, supra*, 472 U.S. at p. 455, 105 S. Ct. 2768.) Rather the narrow role assigned to the reviewing court is solely to determine whether there is "*any evidence* in the record that *could support* the conclusion reached by the disciplinary board." ( *Id.* at pp. 455-456, 105 S. Ct. 2768, italics added.) Here, there is such evidence, even if, as Zepeda contends, there is other evidence that supports his assertion of innocence.

*Zepeda*, 141 Cal. App. 4th at 1500.  Likewise, although the evidence may have led to another result for Castodio, the evidence to support the disciplinary decision was constitutionally sufficient and reliable.  Castodio's right to due process was not violated by prison officials' decision to find him guilty.  The state court's rejection of his claim was not contrary to or an unreasonable application of clearly established federal law.  He is not entitled to the writ of habeas corpus.

B.      Castodio's Objections To The Allegedly Late Answer

Castodio filed a motion for default judgment based on respondent's alleged failure to answer the petition by the June 21, 2013 deadline.  He also spent several pages of the traverse complaining about the untimely answer from respondent, and urged that he should be entitled to a default judgment as a result of the tardy answer.  He is wrong.

Respondent met the June 21, 2013 deadline set by the court for respondent to file and serve an answer.  The court's docket shows that the answer was filed on June 21, 2013 (Docket # 8), and a proof of service shows that the answer was mailed to Castodio on that date (Docket # 8, p. 12).  Sending the answer to Castodio by mail was acceptable compliance with the court's

order. *See* Fed. R. Civ. P. 5(b)(2)(C). There is no requirement that one mail a document early to reach the opposing party by the deadline set for filing, and hand-delivering such a filing to a prisoner in a remote location would be an extraordinary waste of tax dollars. Not only was respondent's service by mail permissible, the ire expressed in Castodio's traverse about the late service is particularly pointless in light of the fact that the mail service caused him absolutely no prejudice. The court's briefing schedule allowed Castodio until July 19, 2013 to respond to the answer set to be served on him on June 21, 2013 – a leisurely briefing schedule that took into account the sometimes slow mail service to prisoners. By his own account, Castodio received the answer on June 25, and mailed his traverse the very next day, rather than taking advantage of the lengthy period of time he was given to prepare his traverse. The motion for default judgment is DENIED. (Docket # 9.)

C.   Castodio's Motion For Appointment of Counsel

Castodio requests that counsel be appointed to represent him in this action. A district court may appoint counsel to represent a habeas petitioner whenever "the court determines that the interests of justice so require" and such person is financially unable to obtain representation. 18 U.S.C. § 3006A(a)(2)(B). The decision to appoint counsel is within the discretion of the district court. *See Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986). Appointment is mandatory only when the circumstances of a particular case indicate that appointed counsel is necessary to prevent due process violations. *See id.* The interests of justice do not require appointment of counsel in this action. The request for appointment of counsel is DENIED. (Docket # 6.)

D.   No Certificate of Appealability

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

7

**CONCLUSION**

The petition for writ of habeas corpus is DENIED on the merits. The clerk shall close the file.

IT IS SO ORDERED.

Dated: July 21, 2013

_____
SUSAN ILLSTON
United States District Judge